United States District Court
District of Massachusetts

| | |
|---|---|
| United States of America, ) | |
| ) | |
| v. ) | |
| ) | |
| Robert Butland, ) | Criminal Action No. |
| ) | 25-10375-NMG |
| Defendant. ) | |

MEMORANDUM & ORDER

GORTON, J.

Defendant Robert Butland ("defendant" or "Butland") has been charged with being a felon in possession of a firearm under 18 U.S.C. §922(g)(1). Pending before the Court is defendant's motion to suppress all evidence seized from his residence during the execution of a search warrant. For the reasons that follow, that motion will be denied.

I.    **Background**

The charges in this case arise from a 2025 investigation, conducted by the Boston Violent Crime Joint Strike Force of the Bureau of Alcohol, Tobacco, Firearms and Explosives. The Strike Force was investigating whether defendant was assembling "ghost guns" in his residence at 84 Oak Street, Somerville, Massachusetts ("the Target Location"). Several months into the investigation, Special Agent Michael J. Carpentier ("S.A.

-1-

Carpentier") submitted an affidavit to Magistrate Judge Jessica Hedges requesting a warrant to search the Target Location for firearms, firearm parts, ammunition, tools, packaging materials, records and electronic records.

As relevant to this motion, the facts presented in the affidavit are as follows. Using online purchase records, S.A. Carpentier connected online purchases of various firearm-related components and accessories to Butland at the Target Location. While many of those components are lawful to purchase and possess, S.A. Carpentier knew, based on his training and experience, that individuals assembling a ghost gun often buy and utilize such items.

Coordinating with the United States Postal Inspection Service, agents learned that packages characterized as "suspicious in nature" had been delivered to the Target Location, including packages from arms manufacturers. Records revealed that Butland had also purchased a 3D printer in 2022, which S.A. Carpentier knew, again based on his training and expertise, are often used to manufacture firearms components. Furthermore, S.A. Carpentier knew that individuals who purchase parts to build a ghost gun commonly maintain records of those purchases, which are created and stored on computers or cell phones.

Magistrate Judge Hedges authorized the issuance of the search warrant. During the execution of the warrant, agents recovered firearms and firearm-related components. Defendant now moves to suppress all evidence seized and "the fruits thereof." He challenges both the commission and nexus elements of probable cause and argues that the search warrant relied on stale information and was overly broad. The government rejoins that the affidavit contained sufficient facts and opinions to establish probable cause and that, in any event, the good faith exception applies.

## II.  **Legal Standard**

The finding of probable cause by a magistrate judge is entitled to great deference. Illinois v. Gates, 462 U.S. 213, 236 (1983). The issuance of a search warrant should be reversed only if the court finds no substantial basis for concluding that probable cause existed. United States v. Dixon, 787 F.3d 55, 58-59 (1st Cir. 2015).

Probable cause exists when, based upon common sense and the totality of the circumstances, there is a fair probability that evidence of a crime will be found at a particular location. Gates, 462 U.S. at 238 (1983). The application for a warrant must demonstrate probable cause to believe that 1) a crime was committed (the "commission" element) and 2) enumerated evidence of such crime will be found at the location searched (the

-3-

"nexus" element). United States v. Gonzalez, 113 F.4th 140, 148 (1st Cir. 2024).  Courts may consider the training and experience of law enforcement officers in determining probable cause. United States v. Floyd, 740 F.3d 22, 35 (1st Cir. 2014).

## III. Discussion

### A. Commission

Defendant contends that S.A. Carpentier's affidavit lacked sufficient evidence to believe a crime had been committed because it did not assert that the firearm parts purchased were 1) compatible with each other, 2) constituted all necessary components of a firearm or 3) could be assembled into an operable weapon.

Defendant's argument, however, misconstrues the probable cause standard and also ignores the statement in the affidavit that 3D printers have the capability of producing and manufacturing gun frames "to house the integral components of a fully functioning firearm."  Probable cause to search requires proof sufficient to support a fair probability that a crime has been committed, taking into account the totality of the circumstances described in the affidavit. United States v. Coombs, 857 F.3d 439, 446 (1st Cir. 2017).  It does not prescribe an actual showing of criminal activity or proof beyond a reasonable doubt. Illinois v. Gates, 462 U.S. 213, 245 n.13, 235 (1984).

Here, the affidavit demonstrated that, over a course of years, defendant purchased various gun parts, including kits containing all the necessary components other than the frame and magazine.  It also stated that defendant had purchased a 3D printer which is often used to manufacture gun components.  That information is sufficient to establish a fair probability that defendant was assembling ghost guns.

It is immaterial that the component parts are legal to purchase and possess. See Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983) ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause[.]"). Furthermore, S.A. Carpentier did not need to prove that the purchased gun parts were compatible such that they could be assembled into a single operable firearm. United States v. Nation, 243 F.3d 467, 470 (8th Cir. 2001) (abrogated on other grounds) (noting that probable cause "does not require that police observe every component or ingredient involved in an illegal drug operation before applying for a warrant").  Defendant's claims to the contrary conflate the probable cause standard with actual proof of criminal activity.

Finally, defendant contends that the affidavit improperly uses the affiant's experience and training to fill in gaps of proof and that the affiant was unqualified because his experience and training did not specifically pertain to ghost

-5-

gun manufacturing.  Both arguments are unavailing.  First, as previously discussed, the affidavit contains particularized facts about online purchases made by defendant.  The affiant's training and experience help explain why those facts give rise to probable cause, i.e. that 3D printers can be used to manufacture critical gun components that may be missing from gun kits.  Thus, contrary to defendant's contention, the affiant's training and experience properly contributed to a finding of probable cause. See United States v. Ribeiro, 397 F.3d 43, 51 (1st Cir. 2005) (noting that an affiant's observations based on general experience and training, "when combined with specific evidence about defendant . . . contribute significantly to the probable cause determination.").

Second, the affiant had, at the time, over a decade of law enforcement experience investigating firearms charges, which warrants a strong presumption that he had relevant experience with respect to 3D-printed firearms.  Furthermore, and contrary to defendant's assertion, the affiant did not need to provide a detailed explanation about how 3D printers work and whether Butland had the materials or skills required to use one to assemble a firearm.  As noted in an analogous case, the affiant "was applying for a search warrant, not testifying as an expert on 3D printers." United States v. Rodriguez, 2025 WL 2831953, at *5 (M.D. Pa. Oct. 6, 2025).

-6-

## B. Nexus

Defendant next asserts that the search warrant application failed to establish a nexus between any criminal activity and the Target Location.  Specifically, defendant suggests that it is "a leap of conjecture" to assume that gun parts and the 3D printer, all of which were shipped to the Target Location, would be found therein.  The Court is underwhelmed.

In determining whether there is a nexus between the criminal activity alleged and the location to be searched, a neutral magistrate must consider the totality of the circumstances set forth in the affidavit and make a "practical, common-sense decision [whether] there is a fair probability" that evidence will be found in a particular location. Ribeiro, 397 F.3d at 49.

Unlike many of the cases defendant proffers, the subject affidavit does not "merely establish that a defendant is suspected of criminal activity[] without linking that activity to his residence." United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015).  The very items giving rise to the suspicion of firearm manufacturing were shipped to the Target Location. Common sense connects the commission to the location to be searched.  The Magistrate Judge had ample reason to find that there existed "a fair probability that contraband or evidence" of gun manufacturing would be found at the Target Location.

-7-

## C. Staleness

Defendant declares that information in the affidavit was stale because some of the purchases had been made as early as 2021 and because the search was conducted roughly six to ten weeks after the last known package delivery date.

In evaluating staleness, courts must

> assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information.

United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008). The Court agrees with the government that the information in the affidavit was not stale given the unique nature of the evidence and the fact that the evidence reflected an ongoing course of criminal conduct. See United States v. Ponzo, 853 F.3d 558, 573 (1st Cir. 2017); United States v. Encarnacion, 26 F.4th 490, 498 (1st Cir. 2022).

## D. Electronic Search

Finally, defendant argues that the digital search authorization was overbroad because the government failed to demonstrate that evidence of a crime will exist on the devices, which he contends was necessary to justify the digital search. He is mistaken.

A warrant authorizing a digital search must establish a "sufficient chance of finding some needles in the computer haystack." United States v. Upham, 158 F.3d 532, 535 (1st Cir.

-8-

1999).  That standard has been met here.  The affiant explained that, based upon his training and experience, individuals who purchase components to assemble ghost guns often maintain records and communications about their actions on digital devices.  Based on that information, Magistrate Judge Hedges determined that there was a sufficient likelihood of finding evidence of criminal activity on the devices.

### ORDER

For the foregoing reasons, the Motion to Suppress (Docket No. 40) is **DENIED**.

**So ordered.**

Nathaniel M. Gorton
Senior United States District Judge

Dated: May 29, 2026